UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARCH INSURANCE COMPANY,

Plaintiff,

v.

FZ SERVICES, LLC, DENIS VENTURA and
GILDA VENTURA, LEXAMARIA VENTURA,
DAMARIS VENTURA, by and through
their next friend, DENIS VENTURA,

Defendants.

_____/

Case No. 15-cv-11271

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MICHAEL J. HLUCHANIUK

**OPINION AND ORDER GRANTING MOTION TO DECLINE JURISDICTION AND FOR
DISMISSAL [7], AND DISMISSING THIS ACTION WITHOUT PREJUDICE**

**I. INTRODUCTION**

On April 3, 2015, Arch Insurance Company ("Plaintiff" or "Arch Insurance")
commenced the present action seeking a declaratory judgment regarding the scope of insurance
coverage for two insurance policies that Arch Insurance issued to Defendant FZ Services, LLC
("FZ Services"): a Commercial General Liability Policy and Business Auto Policy (collectively
"the Policies"). *See* Dkt. No. 1 at ¶ 4.  Arch Insurance seeks a declaratory judgment in order to
clarify that the Polices do not require Arch Insurance to defend or indemnify FZ Services in
litigation brought by Defendants Denis Ventura and his children (the "Ventruas") in the Wayne
County Circuit Court on January 20, 2015. *See id.* ¶¶ 4, 6 (referencing Dkt. No. 1-3).

Presently before the Court is the Venturas' Motion to Decline Jurisdiction and for
Dismissal [7], filed on May 26, 2015.  Arch Insurance filed a Response to the present Motion on
June 10, 2015. *See* Dkt. No. 11.  The Venturas' failed to file a Reply in accordance with the

Court's Local Rules. *See* E.D. Mich. L.R. 7.1(e)(1)(c). After reviewing the briefing, the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the Motion on the briefs as submitted. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons discussed herein, the Court will **GRANT** the Venturas' Motion to Decline Jurisdiction and for Dismissal [7], and **DISMISS** this action **WITHOUT PREJUDICE**.

## II. BACKGROUND

Arch Insurance is a foreign insurer with its principal place of business in Jersey City, New Jersey. *See* Dkt. No. 1 at ¶ 1. FZ Services is a Michigan limited liability company with its principal place of business in Detroit, Michigan. *See id.* at ¶ 2. Arch Insurance issued the Polices to FZ Services for a one-year period effective October 26, 2013. *See* Dkt. No. 1-2 at 2, 26. Arch Insurance is seeking a declaratory judgment as to the scope of the Policies because it "seeks a declaration that it owes no duty to defend or indemnify [FZ Services]," in litigation commenced by the Venturas, in the Wayne County Circuit Court on January 20, 2015 (the "state court action"). *See* Dkt. No. 1 at ¶ 24 (referencing Dkt. No. 1-3).

According to the complaint in the state court action, Denis Ventura suffered severe injuries to his head and arm in the process of changing/repairing a "multi-piece rim" at facilities owned by FZ Services. *See* Dkt. No. 1-3 at 4. While it is not immediately clear, it appears that the multi-piece rim that allegedly injured Mr. Ventura was affixed to a "1987 Hyundai trailer, VIN 145x412S7HL106235c[.]" *Id.* at 7. The Venturas claim that Mr. Ventura's injuries were caused by negligence on the part of FZ Services. *See id.* at 4-6. Additionally, the Venturas brought product liability claims against several companies allegedly involved in the production and sale of the multi-piece rim. *See id.* at 7-13.

Arch Insurance claims that the incident that resulted in Mr. Ventura's injuries was outside the scope of the Policies' coverage. *See* Dkt. No. 1 at ¶ 24. Arch Insurance points to the fact that the Commercial General Liability Policy contains an "auto" exception that precludes coverage for bodily injury that results from ownership, maintenance, use or entrustment of an "auto". *See id.* at ¶¶ 11, 12 (referencing Dkt. No. 1-2 at 41).[1] Likewise, Arch Insurance argues that the Business Auto Policy only identified certain autos for which there was coverage, FZ Services selected to insure only specific vehicles, and the trailer that allegedly injured Mr. Ventura was not one of the covered vehicles. *See* Dkt. No. 1 at ¶¶ 16, 17, 24 (outlining Arch Insurance's argument); *see also* Dkt. No. 1-2 at 2-16 (explaining which auto policy "symbols" FZ Services selected, and a detailed description of the "Covered Auto Designation Symbols").

Additionally, Arch Insurance points out that both Policies have a provision precluding coverage for injuries to employees. With respect to the Commercial General Liability Policy, for example, Arch Insurance points out that there is a specific section limiting coverage for "Workers' Compensation And Similar Laws" and "Employer's Liability." *See* Dkt. No. 1 at ¶ 11

---

[1] Specifically, the Commercial General Liability Policy provides the insurance does not apply for:

> . . . "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

Dkt. No. 1-2 at 41. The Commercial General Liability Policy defines "Bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at 50. The Commercial General Liability Policy defines the term "Auto" as follows:

> a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or
> b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

*Id.* at 49. The Commercial General Liability Policy indicates that "'auto' does not include 'mobile equipment.'" *Id.*

(referencing Dkt. No. 1-2 at 39).[2] Arch Insurance also points out the same for the Business Auto

Policy, which excludes coverage for "Workers' Compensation" and "Employee Indemnification

And Employer's Liability." Dkt. No. 1 at ¶ 18 (referencing Dkt. No. 1-2 at 17-18).[3]

       Thus, in summary, Arch Insurance concludes its Complaint by arguing that the following

three reasons support the declaratory relief it is seeking:

---

[2] Specifically, when noting that there is no coverage for "Workers' Compensation And Similar Laws," the Commercial General Liability Policy notes that the insurance policy does not apply for "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." Dkt. No. 1-2 at 39. For "Employer's Liability" the Commercial General Liability Policy notes that the insurance policy does not apply for:

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:
   (a) Employment by the insured; or
   (b) Performing duties related to the conduct of the insured's business; or
(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

*Id.* According to the Commercial General Liability Policy, the term "'Employee' includes a 'leased worker'. 'Employee' does not include a 'temporary worker'." *Id.* at 50. "'Leased worker' means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker'." *Id.* at 51. "'Temporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." *Id.* at 52.

[3] When noting that there is no coverage for "Workers' Compensation" the Business Auto Policy explains that it is not responsible for "[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law." Dkt. No. 1-2 at 17. For "Employee Indemnification and Employer's Liability," the insurance policy does not cover:

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:
   (1) Employment by the "insured"; or
   (2) Performing the duties related to the conduct of the "insured's" business; or
b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

   (1) Whether the "insured" may be liable as an employer or in any other capacity; and
   (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*Id.* at 17-18.

    a.   The trailer at issue was owned by FZ Services, LLC., and not listed on the policy, and would not otherwise qualify as a covered "auto" under the Business Auto Policy.

    b.   . . . [T]he Commercial General Liability Policy contains an "auto" exclusion which includes injuries caused by trailers.

    c.   Both the Business Auto Policy and the Commercial General Liability Policy provide no coverage for injuries to an employee of FZ Services, LLC. . . .

Dkt. No. 1 at ¶ 24.

### III. LEGAL STANDARD

The Federal Declaratory Judgment Act ("the Act") provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C . § 2201(a) (emphasis added). The Act confers on the "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Given this discretion, a district court is permitted to decline jurisdiction "even [if a lawsuit] otherwise satisfies subject matter jurisdictional prerequisites." *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n,* 481 F.3d 414, 421 (6th Cir. 2007) (quoting *Wilton,* 515 U.S. at 282, 115 S.Ct. 2137). *But see Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 277 (6th Cir. 1990), *abrogated on other grounds* by *Wilton*, 515 U.S. at 289–90, 115 S.Ct. 2137 (noting a district court may not simply decline jurisdiction "as a matter of whim or personal disinclination.").

The present action is not unique, as district courts routinely adjudicate cases involving insurance carriers seeking a declaratory judgment in federal court regarding the scope of coverage when their insureds have been sued for alleged tort liability in state court. *See Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 967–68 (6th Cir. 2000). In this context, the Sixth Circuit has repeatedly held that "declaratory judgment actions seeking an advance opinion on

indemnity issues are seldom helpful in resolving an ongoing action in another court." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.,* 373 F.3d 807, 812–13 (6th Cir. 2004) (quotations omitted); *see also Roumph* 211 F.3d at 968 ("In many of these cases we decided that not proceeding in the federal case was the wise and rational course of action.").

While there is not "a per se rule against exercising jurisdiction in actions involving insurance coverage questions[,]" *Bituminous*, 373 F.3d 807, 812–13, the potential danger of federal courts treading on states' efforts to regulate insurance companies has led the Sixth Circuit to "[hold] on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." *Travelers Indem. Co. v. Bowling Green Professional Associates, PLC,* 495 F.3d 266, 273 (6th Cir. 2007).

The Sixth Circuit has instructed district courts to consider what have come to be known as the *Grand Trunk* factors in order to decide whether the exercise of federal jurisdiction is proper. *See Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 326 (6th Cir. 1984)). According to the Sixth Circuit, the following inquiries make up the *Grand Trunk* factors:

(1) Whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]

    a. whether the underlying factual issues are important to an informed resolution of the case;

    b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court;

    c.  and whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and

(5) whether there is an alternative remedy which is better or more effective.

*Western World Ins. Co. v. Hoey,* 773 F.3d 755, 759 (6th Cir. 2014) (quoting *Flowers,* 513 F.3d at 554, which quotes *Grand Trunk,* 746 F.2d at 326, for the "primary factors," and quotes *Bituminous,* 373 F.3d at 814–15, for the "sub-factors").

Considered holistically, "the *Grand Trunk* factors . . . direct the district court to consider three things: efficiency, fairness, and federalism." *Hoey,* 773 F.3d at 759. The Sixth Circuit has "never assigned weights to the *Grand Trunk* factors when considered in the abstract," because "the factors are not, of course, always equal." *Id.* (citing *Flowers*, 513 F.3d at 563).  Instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Id.*

## IV. DISCUSSION

In contesting the instant Motion, Arch Insurance acknowledges the *Grand Trunk* factors and the fact that several courts within this district have considered the factors to assess the propriety of exercising discretion in situations raising the exact issue presently before this Court. *See* Dkt. No. 11 at 7 (citing *Roumph*, 211 F.3d at 968; *U.S. Fire Ins. Co. v. City of Warren*, 94 F. Supp. 2d 833 (E.D. Mich. 2000); and *Little Caesar Enterprises, Inc. v. Hotchkiss,* 98 F.Supp.2d 818 (E.D. Mich. 2000)). Peculiarly, the cases cited by Arch Insurance support the position that this Court should *not* exercise jurisdiction over this case. *See*, *e.g.*, *Hotchkiss,* 98 F.Supp.2d 818 (applying the five factors to find that exercise of jurisdiction under the Declaratory Judgment Act was not appropriate); *U.S. Fire Ins. Co.*, 94 F. Supp. 2d 833 (putting forth the same analysis and ultimately declining to exercise jurisdiction to grant relief under the Declaratory Judgment Act in

-7-

light of the related state court proceeding). Despite the weight of its own cited authority going against it, Arch Insurance contends that the *Grand Trunk* factors weigh "in favor of this Court keeping jurisdiction." Dkt. No. 11 at 7. After reviewing the record and applying the *Grand Trunk* factors, this Court disagrees. The analysis of the *Grand Trunk* factors is below.

### A.  The First Factor Weighs Against Exercising Jurisdiction

The first factor this Court must consider is whether a decision in the declaratory action will settle the controversy. *Hoey,* 773 F.3d at 759. Looking at the purpose of this factor, this Court finds that this factor weighs against exercising jurisdiction. The ambiguity of the first factor is not lost on the court. As the Honorable Judge Ludington of this district has noted, the answer to this question "depends on what 'controversy' means." *Employers Ins. Co. of Wausau v. Duro-Last Roofing, Inc.*, No. 11-10206-BC, 2011 WL 2119360, at *5 (E.D. Mich. May 27, 2011); *see also id.* ("Is it the wider factual and legal 'controversy' concerning the allegedly defective flooring product, including the cause of the defect and the apportionment of blame? Or is it the narrow 'controversy' between the insurance company and the insured concerning the extent of the insurer's duty to defend and indemnify with respect to the flooring lawsuits?").

In *Hoey*, the Sixth Circuit recently examined two competing lines of precedent that have developed with respect to answering the first two *Grand Trunk* factors "in the context of an insurance company's suit to determine its policy liability." 773 F.3d at 760 (quoting *Flowers,* 513 F.3d at 555).  The Sixth Circuit explained the two lines of precedent as follows:

> One line of cases holds that these two factors relate to whether the declaratory judgment would settle the underlying state-court controversy—that is, the tort action brought by the injured party against the insured—or would at least clarify the legal relationship between the parties in the underlying state-court controversy. The other line of cases directs the district court to focus on the controversy between the parties in the declaratory-judgment action—that is, between the insurer and the insured.

-8-

*Id.* (quoting *Flowers,* 513 F.3d at 555–58) (internal quotation marks and citations omitted); *see also Duro-Last Roofing, Inc.*, 2011 WL 2119360, at *6.

This Court agrees with Judge Ludington's opinion from *Duro-Last Roofing, Inc*., where Judge Ludington noted that the first factor depends "not on whether a discrete 'controversy' would be resolved, but on the relationship between the insurance coverage dispute and the underlying case." 2011 WL 2119360, at *6. Thus, better stated, the question this Court must resolve for these two factors is: "Would the declaratory judgment action resolve the insurance dispute without unnecessarily duplicating the proceedings or considering an issue that has been, or will be, considered by the state court?" *Id.* Here, the answer to this question is no.

As an initial matter, the declaratory judgment action would not settle the controversy in the state court action. Moreover, the Court could not resolve the insurance dispute without *unnecessarily* duplicating the proceedings or considering an issue that has been, or will be, considered by the state court. This is the case because the court may have to consider an issue that will be considered by the state court.

Arch Insurance notes that it is seeking a declaratory action because it contends the Policies provide no coverage for injuries to an employee of FZ Services. *See* Dkt. No. 1 at 11. Specifically, Arch Services noted it is seeking declaratory relief "[t]o the extent that FZ Services, LLC is deemed to be an employer of Denis Ventura, [the Policies] would not provide coverage for the claims alleged by Mr. Ventura in the Wayne County litigation[.]" Dkt. No. 1 at 12. This is problematic because this shows that there are potentially issues that are not strictly legal questions of contract interpretation and that *will* be considered by the state court—namely whether Denis Ventura "was performing work at FZ Services, LLC . . . not as an employee but as an independent contractor." Dkt. No. 7 at 5.

Arch Insurance argues that this "is not dispositive." Dkt. No. 11 at 6. However, Mr. Ventura's classification as an employee or an independent contractor is certainly important. If this Court were to rule on the employment status of Mr. Ventura, the Court would also have to determine Mr. Ventura's rights in relation to FZ Services under Michigan's worker compensation laws. A finding that Mr. Ventura was working as an employee rather than an independent contractor would likely bar him from recovering against FZ Services for negligence liability in the state court action. *See* MICH. COMP. LAWS § 418.131.Thus, the potential of having to address an issue where the facts are disputed leads this Court to conclude that it would be unnecessarily considering an issue that would be considered by the state court.

Arguably, the Court *could* resolve the insurance dispute between Arch Insurance and FZ Services by determining whether the trailer at issue was covered under the Business Auto Policy. *See* Dkt. No. 1 at 11. FZ Services' ownership of the trailer does not appear to be in dispute. Therefore, the Court would only need to address an issue not before the state court that is "strictly a legal question of contract interpretation." *Hoey*, 2013 WL 5372769, at *4.

However, for the Court to exercise jurisdiction in this situation, the Court would have to possibly issue a stay at a later juncture due to the possibility of considering Mr. Ventura's employment status. *See Duro-Last Roofing, Inc.*, 2011 WL 2119360, at *7 ("To the extent there are underlying factual issues that must be resolved by the [state] court before the coverage issues can be finalized, the Court may stay the case at that juncture."). As discussed in more detail below, exercising jurisdiction under such a scenario would be unnecessary when Arch Insurance "could have presented its case to the same court that will decide the underlying tort action." *Bituminous,* 373 F.3d at 816. Accordingly, the Court finds that this factor weighs against exercising federal jurisdiction.

-10-

### B.  The Second Factor Weighs in Favor of Exercising Jurisdiction

The second factor this Court must consider is whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue. *Hoey,* 773 F.3d at 759. The second factor requires the Court to determine whether the federal judgment will "resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Flowers*, 523 F.3d at 557. The Sixth Circuit has noted that the second factor is "closely related to the first factor and is often considered in connection with it." *Id.*; *see also id.* ("Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue.") (citation omitted).

As discussed in the analysis of the first factor, the Court *could* resolve the insurance indemnity obligation between Arch Insurance and FZ Services by determining whether the trailer at issue is covered under the Business Auto Policy. After all, Arch Insurance is not a party to the state court action and the obligation of Arch Insurance to defend is not an issue before the state court. Additionally, the scope of Arch Insurance's coverage with respect to the trailer is not in dispute, and is not an issue before the state court. Collectively, these factors lead the Court to conclude that a judgment in this action could serve a useful purpose in clarifying the legal relation in issue, even though exercising jurisdiction in this situation would be unnecessary. As such, this factor weighs in favor of exercising jurisdiction.

### C.  The Third Factor Narrowly Weighs in Favor of Exercising Jurisdiction

The third factor this Court must consider is whether the declaratory judgment action is being used for procedural maneuvering or is likely to cause a race for *res judicata*. *Hoey*, 773 F.3d at 759. The Court finds that this factor also weighs in favor of this Court exercising federal jurisdiction. The third factor is meant to preclude jurisdiction for "declaratory plaintiffs who file

-11-

their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Flowers* 513 F.3d at 558 (quoting *AmSouth Bank v. Dale,* 386 F.3d 763, 788 (6th Cir. 2004)). "The question is . . . whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id.* (quoting *Amsouth Bank*, 386 F.3d at 789). The Sixth Circuit has noted that it is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* (citations omitted). Instead, the Sixth Circuit guided district courts not to "deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Id.* (quoting *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986).

The Court finds that this factor weighs in favor of exercising federal jurisdiction because there was no race to the courthouse to head off the state court's resolution of the underlying factual issues or to engage in some unidentified procedural maneuver. To the contrary, Arch Insurance filed this suit after the state court litigation commenced seeking a declaration of its duties with respect to FZ Services in the state court action based on an insurance policy.

Nevertheless, there are still some underlying problems due to the questions regarding Mr. Ventura's employment status. In some cases, the Sixth Circuit has at least implied that a declaratory plaintiff can fail this factor irrespective of their actual motives. *See Amsouth Bank*, 386 F.3d at 789 (quoting *NGS Am., Inc. v. Jefferson,* 218 F.3d 519, 523 (6th Cir. 2000), for the proposition: "[A] rule permitting [this sort of declaratory] action could frustrate a plaintiff's choice of forum and encourage forum shopping, races to the courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of judicial process to harass an opponent in litigation[.]") (brackets and alterations in original).

While some issues in the declaratory judgment do not raise issues of *res judicata*, the Complaint does raise legitimate collateral estoppel concerns by seeking a declaration that there is no duty to indemnify FZ Services due to Mr. Ventura's employment status. Other courts in this district have emphasized the potential of collateral estoppel as a concern before finding that the third factor weighs in favor of declining jurisdiction. *See Allstate Ins. Co. v. Das*, 2015 WL 225710, at *5 (quoting *Allied Prop. & Cas. Ins. Co. v. Menser,* No. 12–15453, 2013 WL 791535, at *3 (E.D. Mich. Mar. 4, 2013),  to note that the state court defendant's "decision to file his own action in state court is relevant[,] because [a]s another court in this district has said, '[t]he natural order of things calls for the liability facts to be decided in the injured person's forum of choice, and the indemnity obligations then follow forum.'"). Nevertheless, even with collateral estoppel concerns, this Court still finds that the third factor narrowly weighs in favor of exercising jurisdiction because this case was brought after the state court case and Arch Insurance has done nothing more than choose the jurisdiction of federal rather than state court.

### D.  The Fourth Factor Weighs Against Exercising Jurisdiction

For the fourth factor, district courts are guided to consider whether an exercise of jurisdiction will increase the friction between federal and state courts. *See Hoey*, 773 F.3d at 759. District courts must consider three sub-factors: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Id.* The fourth factor reflects concerns about principles of federalism. *Id.* at 761.After examining the sub-factors, this Court finds that the fourth factor weighs against exercising jurisdiction.

-13-

**a.   The first sub-factor weighs against exercising jurisdiction.**

The Court finds that the first sub-factor weighs against exercising jurisdiction. The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. As discussed, the Court may have to determine underlying factual issues that are important to an informed resolution of the state court action. The Sixth Circuit has noted that when resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court, "the exercise of jurisdiction would be inappropriate." *Id.* (citing *Travelers*, 495 F.3d at 272). Thus, given the uncertainty of what will transpire by exercising jurisdiction, this Court finds that this sub-factor weighs against exercising jurisdiction. *See Bituminous*, 373 F.3d at 815-16 ("Where . . . there are [] potential unresolved questions of state law concerning state regulated insurance contracts, this consideration weighs against exercising jurisdiction.").

**b.   The second sub-factor weighs against exercising jurisdiction.**

The second sub-factor also weighs against exercising jurisdiction. "The second sub-factor focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. The Sixth Circuit indicated that it "generally consider[s] state courts to be in a better position to evaluate novel questions of state law." *Id.* (citations omitted). Nevertheless, the Sixth Circuit's concerns about comity "have less force when the state law is clear and when the state court is not considering the issues." *Id.* Here, the Court may have to stay the case to the extent there are underlying factual issues that must be resolved by the state court before the coverage issues can be finalized. This being the case, the Court is hard-pressed to say that it is in a *better* position to resolve the issues when the state court

-14-

can handle all of the issues without staying the case. As such, this Court finds that the second sub-factor weighs against exercising jurisdiction. *See U.S. Fire Ins. Co.*, 94 F. Supp. 2d at 837 ("There is no suggestion here that the [Michigan state court] is not in a position to define the applicable law in a fair and impartial manner.").

### c. The third sub-factor weighs in favor of exercising jurisdiction.

Lastly, the Court finds that the final sub-factor weighs in favor of exercising jurisdiction. The Sixth Circuit has indicated that the "final sub-factor focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. The Sixth Circuit has opined that state courts are (1) more familiar with issues of insurance contract interpretation and (2) better situated to identify and enforce relevant public policy considerations. *Id.* at 561. Nevertheless, the Sixth Circuit also emphasized that "not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." *Id.* Because this is a case where no state law or policy would be frustrated by the district court's exercise of jurisdiction, this Court finds that the third sub-factor weighs in favor of exercising jurisdiction. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003).

### d. Overall, the sub-factors weigh against exercising jurisdiction.

After applying all the sub-factors, this Court concludes that the fourth factor weighs against assuming jurisdiction. Given the uncertainty of what will transpire in exercising jurisdiction, and the fact that the state court is in a better position to resolve *all* of the issues presented without having to potentially stay the case, the fourth factor as a whole weighs against exercising jurisdiction due to the possibility of creating friction between federal and state-courts.

-15-

### E.  The Fifth Factor Weighs Against Exercising Jurisdiction

The fifth and final factor requires this Court to consider whether there is an alternative remedy which is better or more effective. A district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk,* 746 F.2d at 326. One of the alternative remedies available to the federal declaratory plaintiff is to seek a declaratory judgment in state court. Another possible remedy is for the federal declaratory plaintiff to file an indemnity action at the conclusion of the state action.

Both alternative remedies are available here and they would be more effective for this case. *See*, *e.g.*, MICH. COMP. LAWS § 14.321 (permitting a declaratory judgment to be brought in Michigan state court); Mich. Ct. R. 2.605 (same). Moreover, Arch Insurance could "have commenced a separate action, identical to the present action, in state court and moved for consolidation before the same judge presiding over the state court action." *Allstate Ins. Co. v. Garcia*, No. 13-10209, 2013 WL 1962357, at *2 (E.D. Mich. May 10, 2013)

In this situation, the state court is better situated to settle the controversy because there are potential factual determinations regarding the disputed employee status of Denis Ventura. Because the state court is able to adjudicate everything at once, this Court believes that the state court is more useful in clarifying the legal relation between the parties. Thus, because the alternative state court adjudication available to the parties provides a better alternative, this Court finds that the fifth factor weighs against exercising jurisdiction.

### F.  Balancing the Factors

To summarize, factors one, four, and five weigh against the exercise of jurisdiction. Factor two and three favor the exercise of jurisdiction. The Sixth Circuit emphasized that it has "never assigned weights to the *Grand Trunk* factors when considered in the abstract[.]" *Hoey*,

-16-

773 F.3d at 759; *see also Flowers*, 513 F.3d at 563 ("[W]e have never indicated how these *Grand Trunk* factors should be balanced when reviewing a district court's decision for abuse of discretion."). Nevertheless, the Sixth Circuit indicated that district court should consider three guiding principles: "efficiency, fairness, and federalism." *Hoey*, 773 F.3d at 759.

Considering these principles along with the *Grand Trunk* factors, this Court finds it would be more wise and prudent not to exercise jurisdiction because it will not be efficient and there are potential federalism concerns. This Court does not prefer to stay cases, and that is a likely possibility given the potential underlying factual issues that may need to be resolved by the state court before all coverage issues can be finalized. Moreover, the Court sees no need to encroach upon the state court's jurisdiction because there is no suggestion—fairness or otherwise—that the state court cannot define the applicable law in a fair and impartial manner.

## IV. CONCLUSION

For the reasons discussed above, the Court will decline to exercise jurisdiction in this case. The Court **HEREBY GRANTS** the Motion to Decline Jurisdiction and for Dismissal [7], and **HEREBY DISMISSES** this action **WITHOUT PREJUDICE**.

IT IS SO ORDERED.

Dated: August 5, 2015

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge